FILED
AUG 22 2024
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___ DEP CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. K3 ANALYTICS, LLC,<br><br>    Plaintiff-Relator,<br><br>v.<br><br>BAKER ROOFING COMPANY, LLC<br>f/k/a BAKER ROOFING COMPANY,<br><br>    Defendant. | Case No. 5:24-cv-00483-M<br><br>**FILED UNDER SEAL** |

## COMPLAINT

1. Relator K3 Analytics, LLC ("Relator") brings this action on behalf of itself and the United States of America against defendant Baker Roofing Company, LLC f/k/a Baker Roofing Company for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2. This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven by the Government as a result of a false application.

3. Baker Roofing Company, one of the largest commercial roofers in the country, represented itself as having over 1,000 employees and hundreds of millions of dollars in revenues, which likely would have rendered it ineligible for PPP funding. Yet, its PPP application disclosed only 190 total jobs, for

which it received more than $2.4 million in loan forgiveness.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

5. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as the defendant resides or transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## PARTIES

6. Defendant Baker Roofing Company is a family-owned and operated company, founded by WP Baker in 1915 in downtown Raleigh, and passed down to his son and eventually his grandsons, Prentiss and Frank Baker. Brothers Prentiss and Frank are Chairman and Co-Chairman of the company. Today, Baker Roofing Company has over 25 offices spread across the southeast, collectively referred to herein as Baker Roofing.

7. In addition to the main roofing enterprise, Baker Roofing has three divisions: Baker Restoration & Waterproofing, Peak Metal Products, and Baker Coatings.

8. Baker Roofing Company, LLC f/k/a Baker Roofing Company has a principal location of 517 Mercury St., Raleigh, NC 27603. Mark Lee has been the President since 2010.

9. Baker Roofing of Norfolk LLC has a principal location of 4937 Cleveland St., Virginia Beach, VA 43462 and a registered agent address of 517 Mercury St., Raleigh, NC 27603. Mark Lee is listed as an Executive Manager.

10. Baker Roofing of Roanoke LLC has a principal location of 3308 Shenandoah Ave. NW, Roanoke, VA 27611 and a registered agent address of 517 Mercury St., Raleigh, NC 27603. Mark Lee is listed as the Executive Manager.

11. Baker Roofing Company NC has a principal location of 517 Mercury St., Raleigh, NC 27603. Mark Lee is listed as President.

12. Baker-South Roofing Company has a principal location of 517 Mercury St., Raleigh, NC 27603. Mark Lee is listed as President.

13. Upon information and belief, Baker Roofing of Norfolk LLC, Baker Roofing of Roanoke LLC, Baker Roofing Company NC, and Baker-South Roofing Company are all affiliated with Baker Roofing Company, as that term is defined by the SBA and PPP regulations.

14. The collective employees, revenues, profits, and assets of these affiliated entities and any other Baker Roofing locations should have been included in any calculations when determining whether Baker Roofing Company was eligible for a PPP loan.

15. Relator K3 Analytics LLC is a company that analyzes data to identify

and investigate potential PPP fraud.

## THE PAYCHECK PROTECTION PROGRAM

16. During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

17. Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

18. The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

19. Lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;

- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

20. Borrowers had to submit documentation necessary to establish eligibility such as payroll processor records, payroll tax filings, form 1099s, income and expenses documentation.

21. In general, the maximum amount borrowers could borrow was calculated by aggregating payroll costs from the previous year, with annual employee salaries capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

22. Each borrower certified on the First and Second Draw loan applications that they were eligible to receive the loans under the program guidelines and that their applications and supporting documentation were accurate.

23. Borrowers were able to seek forgiveness of the loans if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities.

## FACTUAL ALLEGATIONS

24. Baker Roofing Company was approved for a First Draw PPP loan of $2,387,800 on April 9, 2020 by Truist Bank. It reported 190 jobs. It listed NAICS code 238160 (Roofing Contractors) on its PPP loan application. The entire loan amount, plus interest, was forgiven for a total of $2,415,591.

25. A business was eligible for a First Draw PPP Loan if the business had 500 or fewer employees, the business met the SBA employee-based or revenue-based size standard for the industry in which it operates (if applicable), or the business was eligible under the SBA's alternative size standard, which requires that the companies' maximum tangible net worth is not more than $15 million; and average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

26. Upon information and belief, Baker Roofing Company was not eligible for its First Draw loan, which may have only been based on the Baker Roofing Company entity in Raleigh, NC. Including the various Baker Roofing affiliates, the company as a whole had over 1,000 employees and hundreds of millions of dollars in revenue, exceeding the size standards for a PPP loan.

### A. The Affiliation Rules

27. When multiple entities are operated under common ownership or management, the SBA generally applies "affiliation rules" that require the various entities to consolidate their employee and revenue count when evaluating their loan eligibility. Their purpose is to capture exactly the situation we appear to have with Baker Roofing, where a single entity owns and/or controls multiple companies.

28. The various companies under the Baker Roofing umbrella are believed

to qualify as "affiliated" with Baker Roofing Company under the SBA's Affiliation Rules for PPP Loans, under the ownership and management tests.

29. The "affiliation based on ownership" test states that:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

30. The "affiliation based on management" test states that:

> Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one [or] more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

31. At all relevant times, Baker Roofing has portrayed itself as a single entity with multiple locations. This includes identifying as a family-owned and family-operated business, with Prentiss Baker as chairman and Frank Baker as co-chairman.

32. A third affiliation test, the "identity of interest" test, applies where there is an identity of interest between close relatives—including spouses, parents, and children—"with identical or substantially, identical business or

economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area)." Accordingly, even if brothers Prentiss and Frank Baker divided the ownership and/or management between themselves and/or immediate family, those companies would still be affiliated.

33. Secretary of State filings tell a similar story. Baker Roofing Company's 2019 annual report in its home state of North Carolina names Prentiss Baker as Chairman of the Board. Mark Lee is listed as President.

34. Many offices around the country operate under the Baker Roofing Company entity. For example, Baker Roofing Company registered as a foreign corporation in Georgia, listing Prentiss Baker as its CEO. It is also registered in Virginia, listing Prentiss Baker as Director and Mark Lee as President.

35. Other offices have their own corporate entity but seemingly remain affiliated with Baker Roofing. For example, Baker-South Roofing Company is registered in Florida, and it lists Prentiss Baker as Chairman and Mark Lee as President. Baker Roofing of Norfolk LLC and Baker Roofing of Roanoke LLC are registered in Virginia and list Mark Lee as Executive Manager, along with Dylan Baker (a vice president of Baker Roofing Company presumably related to Prentiss Baker) and John Matthews (a vice president of Baker Roofing Company).

36. Baker Roofing Company also files annual Form 5500s with the federal government reporting a single-employer 401(k) plan and a single-employer welfare benefit plan.

37. In order to be a single employer plan, the entities must have 80% common ownership and be considered a "controlled group" under ERISA rules. 26 U.S.C. § 1563. Otherwise, if entities outside the control group participated in the plan, then it would be a multiemployer plan. This means that any entities participating in these plans must be affiliated by ownership.

38. As explained below, these plans alone suffice to establish that Baker Roofing Company was not eligible for PPP funding, even if certain entities under Baker Roofing could otherwise be carved out from the affiliation rules.

### B. Affiliation Rule Waiver Requirements

39. To avoid application of the affiliation rules, the Baker Roofing entities would have to meet one of three affiliation rule waiver requirements.

40. The affiliation rules are waived under the PPP program for any of the following three reasons: (1) any business concern with less than 500 employees that, as of the date on which the loan is funded, is assigned a North American Industry Classification System (NAICS) code beginning with the digits 72; (2) any business concern operating as a franchise that is assigned a franchise identifier code by the U.S. SBA; and (3) any business concern that "receives financial assistance from a company licensed under

section 301 of the Small Business Investment Act of 1958," *i.e.*, a "small business investment company." "Financial assistance" includes any type of financing listed in 13 C.F.R. § 107.50, including loans and equity.

41. At least two of the three waivers to the affiliation rules do not apply: none of the Baker Roofing entities are assigned a NAICS code beginning with 72, nor have any of these entities been assigned a franchise identifier code.

42. As for the third waiver, K3 Analytics has not found any evidence that Baker Roofing received any SBIC lending. Nor is it likely that a company founded in 1915 with locations throughout the southeast would have received SBIC lending.

### C. Application of the Affiliation Rules

43. RoofingContractor.com named Baker Roofing Company its 2016 Commercial Roofing Contractor of the Year. In an article about Baker Roofing that year, it reported that the company was "home to 1,200 employees and 18 locations covering territory from Memphis to Orlando."

44. Subsequent articles by the website and federal forms submitted by Baker Roofing evince similar numbers during the periods Baker Roofing Company was supposedly an eligible small business in need of PPP funds.

*Employment Test*

45. Baker Roofing Company claimed only 190 jobs on its First Draw loan application.

46. NAICS code 238160 did not have its own employee size standard, and so the 500-employee standard threshold applied for PPP eligibility.

47. Baker Roofing Company's Form 5500s for its 401(k) plan stated that it had 706 active participants at the start of 2018 and 657 active participants at the end of 2018; 740 active participants at the start of 2019 and 813 active participants at the end of 2019; and 868 active participants at the start of 2020 and 759 active participants at the end of 2020.

48. An "active participant" in a 401(k) plan is generally a current employee of the company. Moreover, it is likely that not every employee participated in the 401(k) plan. In addition to voluntary opt-outs, the plan was only available to employees who had completed six months of service or for whom twelve months had passed since date of hire.

49. Baker Roofing Company (under the plan name Baker Roofing Company Inc) also filed Form 5500s for a Welfare Benefit Plan noting 1,179 active participants at the beginning of 2019 and 1,204 active participants at the end of 2019; and 1,204 active participants at the beginning of 2020 and 1,091 active participants at the end of 2020.

50. Another series of Form 5500s filed by Baker Roofing Company was for a profit sharing plan that "covers all employees of the Company who have six months of service and work for the Virginia division of the Company." Since these documents are filed as a single-employer plan with Baker Roofing

Company as the sponsoring entity, these act as an admission that the "Virginia Division," which likely includes Baker Roofing of Norfolk LLC and Baker Roofing of Roanoke LLC, are affiliated with Baker Roofing Company.

51. The profit sharing plan Form 5500s list 175 active participants at the start of 2019, 164 active participants at the end of 2019, and 167 active participants at the start of 2020. These numbers alone almost total that cited in the First Draw PPP loan application. At present, Baker Roofing has just 5 of its 27 locations—and not its home office—in Virginia, suggesting this is a small fraction of its overall employment numbers.

52. RoofingContractor.com posts an annual list of the top 100 roofing contractors in the country. According to its 2020 list (reporting 2019 statistics), Baker Roofing was the fourth largest roofing company in the entire country, with a peak number of 1,289 employees and 2019 revenues of more than $277 million. According to the website, this information was voluntarily provided by the company itself.

### *Revenue Test*

53. NAICS code 238160 for roofing contractors had a size standard of $16.5 million.

54. Upon information and belief, Baker Roofing would not qualify for First Draw loans under the revenue-based size standard.

55. According to RoofingContractor.com, Baker Roofing had annual

revenues of more than $192 million in 2017, $205 million in 2018, and $277 million in 2019.

56. Baker Roofing Company's Form 5500s also evince significant revenues well above $16.5 million. For example, its 2019 and 2018 Annual Returns reported more than $3.5 million and $2.8 million, respectively, in total contributions to the company's 401(k) plan. These would be unusually high numbers for a company whose total revenues were at or below $16.5 million.

*Alternative Size Standard*

57. Finally, upon information and belief, Baker Roofing would not qualify under the SBA's alternative size standard, which requires that the companies' maximum tangible net worth is not more than $15 million; **and** average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million.

58. The SBA generally defines "tangible net worth" as "total net worth minus goodwill," meaning that intangible assets other than goodwill are not subtracted from the "total net worth calculation."[1] Per our understanding

---

[1] For example, in the SBA's "Size Status Declaration" (SBA Form 480), the SBA defines "tangible net worth" as "total net worth minus goodwill" (https://www.sba.gov/sites/default/files/files/SBA_480_4.pdf) instead of the Generally Accepted Accounting Principles (GAAP) definition of this term, which is total net worth minus all intangibles. Although this form is used for the SBIC program, both the SBIC and PPP loans are administered by the SBA and feature alternative size standards.

from working with the SBA on similar cases, this term is generally synonymous with the "stockholders' equity" line on a balance sheet.

59. It is highly unlikely that one of the top five largest roofing companies in the country, with average annual revenues of $241 million over 2018 and 2019, would have a net worth of less than $15 million and annual net profits of less than $5 million.

60. The company's Form 5500s again suggest net worth and net profits far exceeding the alternative size standards. Net assets in the company's 401(k) retirement plan were more than $23 million at the end of 2019. The Virginia-only 401(k) profit sharing plan with just 175 active participants at the start of the year rose $929,929 between 2018 and 2019, from almost $2.7 million in assets to nearly $3.6 million in assets, of which $656,868 was from contributions.

61. Baker Roofing Company contributed more than $1.1 million and $1.27 million to its employees' 401(k) plan in 2019 and 2018, respectively. It would be highly unusual for a company to contribute approximately 20%-25% of its net profits to an employee retirement plan (in addition to the 401(k) profit sharing plan and welfare benefits plan), as would be the case if its net income was only $5 million.

-14-
Case 5:24-cv-00483-M-RN    Document 1    Filed 08/22/24    Page 14 of 18

## FALSE CERTIFICATIONS

62. Version one of the PPP Borrower Application Form,[2] effective April 2, 2020, required the applicant to certify in good faith that, *inter alia*:

   1) The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

   2) The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees [sic] or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.

   3) I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

63. Baker Roofing Company had to make these certifications when applying for PPP funding.

64. Some or all of the above PPP certifications were false when made by

---

[2] *See* https://www.sba.gov/sites/default/files/2022-02/PPP-Borrower-Application-Form-Fillable.pdf.

Baker Roofing Company because it exceeded the eligibility size standards.

## CONCLUSION

65. Because Baker Roofing Company did not qualify for PPP funding, it should be required to repay its PPP loan and interest that was forgiven by the federal government, trebled, plus processing fees and penalties.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729
## FALSE CLAIMS ACT

66. Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

67. As set forth above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

68. As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

69. Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

70. Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

## PRAYER FOR RELIEF

WHEREFORE, Relator prays for judgment against Defendant:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

LISA WALKER ATTORNEY AT LAW PLLC

BY: /s/ Lisa Walker

LISA WALKER
N.C. State Bar No. 47809
P.O. Box 1473
Knightdale, NC 27545
Telephone: (919) 719-2730

-17-

Facsimile: (919) 719-2799
Email: lisa@lisawalkerlaw.com

Jason Marcus (*pro hac vice pending*)
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Road, Suite 660
Atlanta, Georgia 30326
Telephone: (770) 988-5035
Facsimile: (678) 648-5544
Jason@fcacounsel.com